IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| WESTERN RADIO SERVICES CO., an Oregon Corporation; and RICHARD L. OBERDORFER | ) ) ) | CASE NO. 08-6359-HO |
| | ) | ORDER |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNITED STATES FOREST SERVICE, | ) ) | |
| Defendant. | ) ) | |

_____

<u>Introduction</u>

Plaintiffs Western Radio Services Company and its president, Mr. Richard Oberdorfer, bring this action under the Administrative Procedures Act (APA), against the United States Forest Service (USFS) alleging violations of the National Environmental Policy Act (NEPA) and the National Forest Management Act (NFMA) and seeking declaratory and injunctive relief. [#1]. Plaintiffs challenge the USFS decision to allow the Bonneville Power Administration (BPA) to construct a

1 - ORDER

telecommunication facility and related improvements at Walker Mountain, a designated electronics facilities site which is located in Klamath County, in the Deschutes National Forest. [#1,#17].

Plaintiffs contend that the USFS violated federal law in its preparation of the Decision Notice, its 'finding of no significant impact' (FONSI) as well as the Environmental Assessment (EA) done for the Walker Mountain Communication site and its Forest Plan Amendment for the BPA tower and building project (BPA project). [#1, #22].  Plaintiffs seek (1) an order declaring that the USFS failed to comply with the Deschutes National Forest Land and Resource Management Plan (LRMP) in violation of NFMA and the APA; (2) an order declaring that the USFS failed to comply with NEPA; (3) an order enjoining the USFS from undertaking activities on the BPA project unless/until it complies with NEPA, NFMA and the APA; and (4) an award of reasonable attorney fees and costs.  *Id.*

Defendant USFS first responds that plaintiffs lack standing because they have not suffered any legal injury or shown that their interests are covered by either NEPA or NFMA zones of interest. [#38].  Second, the USFS argues that plaintiffs have failed to exhaust two of their NEPA claims before the USFS thereby depriving this court of jurisdiction on those claims. *Id.*  Third, the USFS asserts that two of plaintiffs' other NEPA

2 - ORDER

claims and a NFMA claim fail to state a cognizable claim. *Id.*
Finally, the USFS argues that plaintiffs' claims have been
largely mooted because site clearing and construction of the
contested facilities were completed in October 2009 and BPA has
been transmitting from the new tower and building since that
time.

Both plaintiffs and defendant move for summary judgment
[#22, #27].

**I.   Standards:**

A.   Summary Judgment:

Summary Judgment is proper when there is no genuine issue as
to any  material fact and the moving party is entitled to
judgment as a matter of law.  Fed.R.Civ.P. 56©.  Material facts
are those that might affect the outcome of the case.  *Anderson v.
Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).  A dispute over a
material fact is "genuine" if there is sufficient evidence for a
reasonable jury to return a verdict for the nonmoving party.  *Id.*

B.   Administrative Procedure Act Claims:

Claims brought pursuant to NFMA and NEPA are reviewed under
the Administrative Procedure Act (APA) and may be resolved
through motions for summary judgment.  *Idaho Sporting Cong. Inc.
v. Rittenhouse,* 305 F.3d 957, 964 (9th Cir. 2002).  Under the APA
the court reviews the challenged agency action under a narrow and
deferential standard to determine whether the agency's action was

arbitrary and capricious.  5 U.S.C. § 706(2)(A); *Friends of the Earth v. Hintz,* 800 F.2d 830 (9th Cir. 1986).  The court's review is generally limited to the agency's administrative record. *Florida power and Light v. Lorion*, 470 U.S. 729, 743 (1985).

A challenged agency decision will be upheld so long as the agency based its decision on consideration of the relevant factors and avoided making a clear error of judgment.  *Marsh v. Or Natural Res. Council,* 490 U.S. 360 378 (1989).  The court may not substitute its judgment for that of the agency.  *Citizens to Preserve Overton Park Inc., v. Volpe,* 402 U.S., 416 (1971)(abrogated on other grounds).

C.   Standing:

To establish standing under Article III of the U.S. Constitution, plaintiffs must show (1) the invasion of a legally protected interest; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the court can redress the injury with a favorable decision.  *Or Natural Desert Ass'n v. Donbeck,* 172 F.3d 1092, 1094 (9th Cir.1998)(citing *Lucan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

Additionally, the APA provides that a plaintiff seeking to challenge an agency action must be adversely affected or aggrieved by agency action within the meaning of the relevant statute.  *Nevada Land Action Assoc. V. United States Forest Serv.,* 8 F.3d 713, 715-16 (9th Cir. 1993)(citing 5 U.S.C. § 702).

Thus in addition to constitutional standing requirements, under the APA, a plaintiff must assert an interest arguably within the zone of interests to be protected or regulated by the statute. *Id.(citing Assoc of Data Processing Serv. Org. Inc. V. Camp,* 397 U.S. 150, 153 (1970)). The purpose of the zone of interests test is to exclude those plaintiffs whose suits are more likely to frustrate rather than further the statutory objectives. *Id.*(citing *Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 397,Fn.12 (1987)).

## II.  Undisputed facts:

Because the court agreed to waive the requirement for a concise statement of facts in this matter [#16], the following undisputed facts are gleaned from the competing voluminous summary judgment memoranda.

Walker Mountain has been a developed electronics site in the Deschutes National Forest in Klamath County, since approximately 1971. [# 22, #28]. At an elevation of 7,086 feet, Walker Mountain is one of the few higher elevation peaks with road access in Central Oregon that is not located in a wilderness area and already has electrical power. [#28-p.2]. Thus, while a portion of the site is eligible for protection under the National Historic Preservation Act, Walker Mountain is designated for development of electronic sites under the LRMP (which was last amended in April, 2009). [#22-p.4;# 28- pp.2-4].

In 1995, the USFS issued a decision amending its 1982 site

5 - ORDER

plan and establishing Zones A and B at Walker Mountain. [#28-p.2, AR 1747,1750-54]. Zone A contains historic properties where further electronic development is not allowed and where removal of elements that detract from the historic nature is encouraged. [#28-p.2, AR 1751-52]. Zone B permits further electronic developments. [#28-p.2, AR 1991, 2117].

The 1995 plan established a "visual quality objective" for Walker Mountain which meant that while development might be evident from highways 58 and 97, it must remain subordinate to the characteristic landscape. [#28-p.3, AR 1732, 1738, 1746, 1570]. On the electronics site, the visual quality objective allows development to dominate the character of the landscape. [#28-p.3, AR 1738]. Thus Zone B will be dominated by communication site structures, while Zone A will have visual elements that detract from its historic character phased out. [#28-p.3,AR 1741, 1747-48].

The BPA project proposed to build a new communications building and a 140 foot tower in Zone B on the Walker Mountain site. [#28-p.3, AR 1994-95; #22-p.3, AR 2205]. Pursuant to the visual quality requirements, BPA completed a tower visibility study in September 2008, which concluded that the new tower would be subordinate to the existing terrain and communications towers. [#28-p.4, AR 2001-21]. BPA also sent out a letter inviting public comment on the proposed site development to be sent to BPA

6 - ORDER

and the USFS - no comment was received at that time.  [#28-p.4, AR 2070-72, 2234].

In February 2009, the USFS published a preliminary EA outlining BPA's proposal and proposed actions to remove non-conforming structures in Zone A.  [#28-p.4, AR 2120-63, 2179-80]. Another comment period ensued during which the USFS received one comment - a two-page letter from plaintiff, Mr. Oberdorfer. [#28-p.4, AR 2191-92].

The USFS issued a final EA in April 2009 and a Decision Notice authorizing the BPA project on April 14, 2009.  [#28-p.4, AR 2198, 2254].  The EA noted that the BPA project would include construction of a new tower, a new building[1], a concrete pad for three propane tanks and an access road[2].  [#28-p., AR 2214].  The tower was to be sited off the side of the mountaintop so that its tip's elevation would be no higher than those currently existing[3] on the site.  [#28-p.5, AR 2206, 2210, 2214, 2217, 2221, 2237].

The USFS, after considering four factors: (1) timing, (2) location and size, (3) goals and objectives and outputs and (4) management prescriptives, determined that the Zone B changes

---

[1]    This 1,200 square foot building was to have a 600 square foot footprint and be built partially on the mountain's slope to reduce its profile.  [#28-p.5, AR 2070-72, 2234].

[2]    The access road was to be a 500 foot long loop that would accommodate parking.  [#28-p.5, AR 2214].

[3]    Thus, no tower's tip is higher than 100 feet about the top of the mountain or 7,186 feet in elevation.

7 - ORDER

incorporated in the Forest Plan amendment were not of significant impact.  [#28-p.6, AR 2236].  The Zone A changes included removal of towers, a building and an overhead power line all of which were determined to improve the historic characteristics of the area.  [#28-p.6, AR 2211, 2249].

Following the Decision Notice, Mr. Oberdorfer submitted a Freedom of Information request dated May 2, 2009, to the USFS, for the project file.  [#28-p.6, AR 2259].  The USFS responded with the requested documents on May 15, 2009.  [#28-p.6, AR 2262-68].

Plaintiff Oberdorfer then challenged the Decision Notice. [AR 2272-74].  His appeal was denied on June 24, 2009.  [#28-p.6, AR 2350-55].  Western Radio also challenged the notice [AR 2275-77], requesting a stay, pending appeal.  [#28-p.6 fn.1, AR 2321]. The USFS denied the stay request and later denied Western Radio's appeal on August 21, 2009.  [#28-p.6, fn.1, AR 2321, 2466-67].

BPA began construction in July, 2009, and all Zone B construction is completed at this time, with BPA's tower and building now in operation.  [#28-p.6, Ex. A, Decl Krohn & Ex. B, Decl Jewkes].  Shortly after BPA construction began, plaintiffs filed this complaint in the USDC Portland division, challenging the EA and Decision Notice; the case was transferred to the Eugene Division and in August, plaintiffs filed a motion for a

TRO and preliminary injunction which this court denied on August 18, 2009. [#13].

**III.      National Environmental Policy Act (NEPA) and National Forest Management Act (NFMA):**

The NFMA provides the statutory framework for the management of national forests, and imposes a duty on the USFS to balance the demands on national forests, including timber sales, recreational use, and environmental preservation, to ensure the continued diversity of plant and animal communities.  16 U.S.C § 1604(a), and(g)(3)(B).  Forest plans must be revised at least every 15 years and may be amended at other times as well, however, if such amendment would result in a significant change to a plan, extensive procedures are required.  16 U.S.C. § 1604(f)(4).  The Forest Supervisor has the discretion to determine whether and how to change the forest plan which is then implemented through site specific projects consistent with the plan.  36 C.F.R. §§ 219.7(a)(5), 219.6; see also *Idaho Conserv. League v. Mumma,* 956 F.2d 1508, 1512 (9th Cir. 1992).

NEPA requires federal agencies to prepare an environmental impact statement (EIS) whenever they propose to undertake any major federal action "significantly affecting the quality of the human environment."  42 U.S.C. § 4332©.  The goal of NEPA is twofold: (1) to ensure the agency will have detailed information on significant environmental impacts when it makes its decisions;

and (2) to guarantee that this information will be available to a larger audience." *Inland Empire Public Lands Council v. USFS,* 88 F.3d 754, 758 (9th Cir. 1996).

Unlike the NFMA, NEPA imposes no substantive requirements and exists only to ensure that agencies publicly consider the environmental impacts of their actions before going forward. *Idaho Sporting Cong. Inc.,* 305 F.3d at 963.  In other words, NEPA ensures a process rather than a particular result.  *Inland Empire,* 88 F.3d at 758.

Under NEPA, the question is whether or not a proposed project will significantly affect the environment and therefore trigger the requirement for an EIS.  *Blue Mountains Biodev. Proj. V. Blackwood,* 161 F.3d 1208, 1212 (9th Cir. 1998).  If an agency determines (on the basis of an EA) not to prepare an EIS, it must prepare a 'finding of no significant impact' (FONSI) explaining its determination.  *Id.*

NEPA's purpose is to protect the environment not a specific plaintiff's economic interests or frustrated financial expectations that are not coupled with environmental considerations.  *Nevada Land Action Ass'n v. USFS,* 8 F.3d 713, 715-16 (9th Cir 1993); see also *Port of Astoria v. Hodel,* 595 F.2d 467, 475 (9th Cir.  1979)..  Therefore a plaintiff who asserts purely economic injuries does not have standing to challenge an

agency action under NEPA.  *Nev. Land,* 8 F.3d at 716

## IV.  **Plaintiffs' Standing:**

Defendants first argue that plaintiffs lack standing to bring claims under either NEPA or NFMA because they do not demonstrate any cognizable injury. [#28-pp. 11-13; #38-pp.2-5]. Plaintiffs dispute that they lack standing to sue, without directly responding to defendant's assertions and instead argue that "plaintiffs' scoping comments, EA comments, administrative appeals and reply, clearly demonstrate standing." [#34-p.23]. Plaintiffs also assert that they have standing because there is a "potential incompatibility caused by the BPA project and the broad changes to the Forest Plan which plaintiffs will have to live with as site operators." [#34-p.24].

To establish Article III standing, plaintiffs "must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical" and which is causally linked to the agency action.  *Luvan v. Defenders of Wildlife*, 504, U.S. 555, 560 (1992)(internal cites and quotes omitted).  They must also show that it is likely that the injury will be redressed by a foreseeable decision.  *Id.*

A party does not need Article III standing in order to appeal an agency's proceedings.  See e.g., *NW Environmental Defense Ctr v. BPA*, 117 F.3d 1520, 1528 (9th Cir. 1997).  For this

11 - ORDER

reason, facts supporting plaintiffs' appearance in agency proceedings are insufficient to establish Article III standing without more particularized assertions of injury.  *Id.*

When as here, the plaintiff is not himself the object of the government action (or inaction), that he is challenging, standing is not precluded, but is ordinarily substantially more difficult to establish.  *Luvan,* 405 U.S. at 561-62.  The party invoking federal jurisdiction bears the burden of establishing standing which must be established and supported in the same way as any other matter on which the plaintiff bears the burden of proof. *Id.*

The "injury in fact" test requires that the party seeking redress be himself among the injured in order to survive summary judgment.  *Luvan,* 405 U.S. at 562-63.  Plaintiffs should submit affidavits or other evidence showing through specific facts that one or more of them are directly affected apart from any special interest they may have in the subject[4].  *Luvan,* 405 U.S. at 563. Further more, plaintiffs' distinct and palpable personal injury asserted must be redressable by the action they seek.

However, the court is to give agency decisions a presumption of validity and, where several administrative solutions exist for a problem, courts are to uphold any one with a rational basis. *Wilderness Public Rights Fund* v. *Kleppe,* 608 F.2d 1250, 1254 (9th

---

[4]     Plaintiffs here have not made such a showing.

Cir. 1979).

Unlike plaintiffs in *Oregon Natural Resources Council*[5], plaintiffs here have not adequately demonstrated how their interests are linked to those environmental interests that NFMA requires the USFS management plans to take into account and protect. Plaintiffs in this matter have only generally averred an injury saying they are a "small telecommunications company and its owner [who] . . .would sustain an injury to their interests if the BPA project is undertaken in absence of legally and scientifically sufficient analysis of the project's impacts and compliance with the Site plan and NFMA provisions . . . ." [#1 —¶ 11].

Thus, exactly how the alleged NEPA violations would injure Western Radio or Mr. Oberdorfer's interests is unclear based on the record currently before the court. Furthermore, it is well established that economic interests are not within the NEPA's "zone of interests." Plaintiffs interests therefore do not appear to fall into either the NFMA or NEPA zones of interest.

Additionally, defendants assert that the bulk of plaintiffs' claims are now moot because plaintiffs can no longer obtain effective declaratory or injunctive relief for defendants' actions in Walker Mountain's Zone B - the necessary tree removal

---

[5]   59 F.Supp.2d 1085 (W.D. WA 1999).

13 - ORDER

has been done[6], the new BPA tower[7], access road , propane pad and building[8] have been constructed and are presently operating. [#28-pp.16-18].  Similarly, BPA's removal of towers and buildings in the historic area in Zone A is expected to be completed this spring (2010).  [#28-Ex. A, Krohn Decl-p.3].  Thus defendant argues, whatever harm plaintiffs would have suffered from the BPA project has already resulted and there is little declaratory or injunctive relief now available.

Mootness promotes a threshold jurisdictional analysis similar to the above-detailed analysis regarding standing. Federal courts have no jurisdiction over cases that are moot, i.e., no jurisdiction where no actual or live controversy exists. *Cook Inlet Treaty Tribes v. Halala,* 166 F.3d 986, 989 (9th Cir. 1999).  The requisite personal interest that existed at the commencement of the action must continue throughout its course – essentially mootness is the doctrine of standing set in a time frame.  *Id.*

Plaintiffs attempted to block this project earlier in this litigation with a request for a TRO and preliminary injunction that this court denied on August 18, 2009. [#13].  Plaintiffs now

---

[6]     Tree removal was completed by July 27, 2009. [#28-Ex. A, Krohn Decl-p.3].

[7]     The tower was begun on August 13, 2009 and completed October 2, 2009.  [#28-Ex. A, Krohn Decl-p.3].

[8]     The building was substantially completed by October 12, 2009.  [#28-Ex. A, Krohn Decl-p.3].

14 - ORDER

argue that although the BPA tower is constructed, the plan amendment has "created enormous precedential changes" which the court has the power to reverse so it is not effective for future applicants. [#34-p.26]. Plaintiffs also contend that the USFS assured the public and other site users that the BPA tower could be relocated if necessary to address concerns about future interference. *Id.* Because economic interests do not fall under NEPA's purview this reasoning does not enliven plaintiffs' claim. Furthermore, plaintiffs do not assert a present interference so, lack a live controversy for the court's consideration.

For all the reasons enunciated above, I find that plaintiffs lack standing to bring these claims.

<u>CONCLUSION</u>

Based on the foregoing analysis, plaintiffs' Motion for Summary Judgment [#22] is DENIED; defendant's Cross Motion for Summary Judgment[#27] is GRANTED. This matter is dismissed.

IT IS SO ORDERED.

DATED this ___23rd___ day of March, 2010.

United States District Judge